UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR15-0386JLR |
| Plaintiff, | ORDER ON MOTION FOR WRIT OF ERROR CORAM NOBIS |
| v. | |
| MONICA ARCE-FLORES, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Monica Arce-Flores's motion for a writ of error

*coram nobis*.  (Mot. (Dkt. # 317).)  The United States of America ("the Government")

opposes Ms. Arce-Flores's motion.  (Resp. (Dkt. # 319).)  The court has considered the

motion, the parties' filings in support of and in opposition to the motion, the relevant

//

//

//

portions of the record, and the applicable law. Being fully advised,[1] the court

CONCLUDES that pursuant to Federal Rule of Criminal Procedure 37, Ms.

Arce-Flores's motion raises a substantial issue for the reasons set forth below.

## II.    BACKGROUND

This case was originally filed on December 3, 2015. (*See* Indictment (Dkt. # 1).)

Ms. Arce-Flores, along with three co-defendants, was charged with one count of

conspiracy to violate 8 U.S.C. § 1324, one count of forced labor and attempted forced

labor, and one count of human trafficking. (*See id.*; Superseding Indictment (Dkt.

# 147).) At the time of her arrest, Ms. Arce-Flores was illegally in the United States.

(*See* Mot. at 3.) After negotiations with the Government and on advice of her counsel, on

December 1, 2016, Ms. Arce-Flores accepted a plea agreement and pled guilty to the

misdemeanor of improper entry by an alien under 8 U.S.C. § 1325(a)(1). (12/1/16 Min.

Entry (Dkt. # 242); Plea Agreement (Dkt. # 244)); 8 U.S.C. § 1325(a)(1) ("Any alien who

[] enters or attempts to enter the United States at any time or place other than as

designated by immigration officers . . . shall, for the first commission of any such

offense, be fined under title 18 or imprisoned not more than 6 months, or both . . . ."). On

December 2, 2016, the court imposed a sentence of "time served." (Arce-Flores Judg.

(Dkt. # 246) at 2.) Ms. Arce-Flores's guilty plea and sentencing underlie the instant

motion.

---

[1] Ms. Arce-Flores requests oral argument, but the court finds that oral argument would not be helpful at this stage of the proceedings. (*See* Mot. at 1); Local Rules W.D. Wash. LCrR 12(b)(9).

**A.      Plea Negotiations and Hearing**

Before pleading guilty to the misdemeanor charge, the Government offered Ms. Arce-Flores the opportunity to plead to a felony charge of harboring an illegal alien with a recommendation of credit for time served. (Engelhard Decl. (Dkt. # 317-1) ¶ 3.) Ms. Arce-Flores rejected this plea agreement because she wanted to contest her removal from the United States, and her counsel, Scott Engelhard, advised her that a felony charge would prevent her from doing so. (*Id.*) Mr. Engelhard believed that as long as Ms. Arce-Flores pleaded guilty to a crime for which the maximum sentence was less than 365 days, she would be eligible to contest her removal. (*Id.* ¶¶ 5-7; *see also* Arce-Flores Decl. (Dkt. # 317-3) ¶ 5.) Thus, Mr. Engelhard told the Government that Ms. Arce-Flores "would probably plead guilty to the misdemeanor of illegal entry under 8 U.S.C. § 1325(a)(1) which has a maximum term of imprisonment of 'not more than 6 months.'" (Engelhard Decl. ¶ 4.) Mr. Engelhard attests that he "made this counter-offer based upon [his] belief that a plea to this misdemeanor offense would not have substantially adverse consequences to Ms. Arce-Flores['s] effort to fight deportation/removal." (*Id.*; *see also* Arce-Flores Decl. ¶ 5.) The Government agreed to this arrangement and on November 30, 2016, filed a superseding information charging Ms. Arce-Flores with illegal entry. (Superseding Information (Dkt. # 240) at 1.) Based on Mr. Engelhard's advice that she "would have a good chance of being able to stay in this country even if [she] pled guilty and that [she] would still have a good chance of fighting deportation or removal in immigration court," Ms. Arce-Flores agreed to plead guilty. (Arce-Flores Decl. ¶ 5; *see also id.* ¶ 7 ("Had I known that a conviction to the

misdemeanor of illegally entering the United States with a six[-]month sentence would prevent me from fighting deportation, I would not have pled guilty and would have insisted on some deal with the prosecutor to a sentence of 179 days.").)

At the December 1, 2016, plea hearing, the Honorable Chief Judge Ricardo S. Martinez informed Ms. Arce-Flores during the plea colloquy that accepting the plea may have adverse immigration consequences. (Plea Hearing (Dkt. # 317-4) at 10:2-23, 12:17-20.) Specifically, he discussed Paragraph 6 of the plea agreement (*id.* at 10:2-22), which stated:

> Defendant recognizes that pleading guilty may have consequences with respect to her immigration status because she is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, including the offense to which Defendant is pleading guilty, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her mandatory removal from the United States.

(Plea Agreement (Dkt. # 244) ¶ 6.) Ms. Arce-Flores confirmed that she understood this paragraph of the plea agreement. (Plea Hearing at 10:22-23.) Chief Judge Martinez also confirmed Ms. Arce-Flores's understanding that she would not "be able to withdraw from the plea of guilty solely because" she did not "like the sentence imposed by the court." (*Id.* at 12:17-20.) After the colloquy, Ms. Arce-Flores pleaded guilty to illegal entry. (*Id.* at 18:12-17.)

//

**B.      Sentencing and Subsequent Clarification**

The next day, the undersigned judge sentenced Ms. Arce-Flores.  (12/2/16 Min. Entry (Dkt. # 245); *see also* Sentencing Tr. (Dkt. # 317-5).)  The Government recommended a sentence of time served (Sentencing Tr. at 4:24-5:1), while Mr. Engelhard asked the court to impose "zero sentence, zero imprisonment, zero fine, zero probation" (*id.* at 10:22-25).  The court noted that the crime to which Ms. Arce-Flores pleaded guilty—illegal entry—was "not a terribly serious one" (*id.* at 13:12-13) but concluded that it could not "nullify" the statute by imposing no sentence (*id.* at 14:1-5). Accordingly, the court imposed a sentence of time served with no probation or supervised release.  (*Id.* at 14:22-24, 15:9-11.)  Mr. Engelhard did not object to the sentence at the hearing.  (*See generally id.*)

After the court sentenced Ms. Arce-Flores, she was transferred to the Northwest Detention Center in Tacoma, Washington, to await immigration proceedings unrelated to her conviction.  (*See* Bond Order (Dkt. # 317-6).)  On March 8, 2017, the immigration court denied Ms. Arce-Flores's bond request in part because she had served at least 180 days for a criminal offense, which in turn meant that she may be ineligible for cancellation of removal.  (*Id.*)  Specifically, Immigration Judge John C. Odell noted that Ms. Arce-Flores had applied for cancellation of removal, but "does not appear eligible for that form of relief because she served more than 180 [days] in prison for a criminal offen[s]e in the United States between December 2015 and December 2016." (*Id.* at 5.) Because she was first arrested on December 7, 2015, and remained in custody until her

December 2, 2016, sentencing, Immigration Judge Odell concluded that Ms.

Arce-Flores's "'time served' sentence was for almost one year in prison." (*Id.*)

Based on Immigration Judge Odell's observation, Ms. Arce-Flores moved to clarify the court's sentence. (Mot. to Clarify (Dkt. # 303) at 1.) The motion stated that the court's "decision may have a substantial impact upon an immigration removal hearing for Ms. Arce-Flores" (*id.*) because "[i]t appears that the Immigration Court assumed that the 'credit for time served' sentence meant that Ms. Arce-Flores served at least 180 days as a result of conviction" for the illegal entry charge (*id.* at 3 (emphasis omitted)). Ms. Arce-Flores contended that the immigration judge's "assumption" was "incorrect" because she "did not serve any time in custody as a result of the misdemeanor offense at issue." (*Id.*) Ms. Arce-Flores further explained that cancellation of removal—which she seeks—requires a finding of good moral character, which a person cannot show if she has been "confined, as a result of conviction, to a penal institution for an aggregate period of one hundred eighty days or more." (*Id.* at 2 (quoting 8 U.S.C. § 1101(f)(7).)

In a subsequent order, the court clarified that it "intended to sentence Ms. Arce-Flores to six (6) months" for the illegal entry offense. (4/7/17 Order (Dkt. # 304) at 2.) Despite Ms. Arce-Flores's suggestion that "she should receive a shorter sentence because she pled to an immigration offense, was a first time offender, and has family legally in the United States," the court stated that "the most lenient sentence it could impose, reflecting the factors contained in 18 U.S.C. § 3553(a), was six (6) months." (*Id.* at 2-3.) After the court's clarification, Ms. Arce-Flores appealed to the Ninth Circuit

//

1  (Not. of Appeal (Dkt. # 309)), and that appeal is currently pending (Time Sched. Order

2  (Dkt. # 310) at 2).

3  **C.    The Instant Motion**

4       Ms. Arce-Flores now moves for a writ of error *coram nobis*.  (*See* Mot.)

5  Specifically, she argues that Mr. Engelhard provided ineffective assistance of counsel

6  because he failed "to understand the immigration consequences of the imposition of a

7  six[-]month sentence in this case"; assured her "that there would not be adverse

8  immigration consequences from a conviction and six[-]month sentence"; and failed to

9  request that the court at sentencing and upon consideration of the motion to clarify

10  "impose a sentence of 179 days of actual incarceration."  (*Id.* at 1-2.)  To remedy the

11  alleged ineffective assistance of counsel, Ms. Arce-Flores asks the court to (1) vacate the

12  judgment and withdraw the guilty plea, (2) reduce her sentence to 179 days, or (3) vacate

13  the judgment and hold a new sentencing hearing.  (*Id.* at 2.)  The Government opposes

14  the motion.  (*See* Resp.)

15       Ms. Arce-Flores contends that her counsel failed to recognize that in order for her

16  to qualify for cancellation of removal, she would have to demonstrate that she is a person

17  of good moral character.[2]  (*See* Mot. at 5); 8 U.S.C. § 1229b(b)(1)(B) ("The Attorney

18  _____

19       [2] Because she was illegally in the country, Ms. Arce-Flores was subject to deportation.
    (*See* Mot. at 3.)  However, because she has children who are United States citizens, she could
    qualify for cancellation of removal and receive lawful permanent resident status under 8 U.S.C.
20  § 1229b(b)(1).  (*Id.*); *see also* 8 U.S.C. § 1229b(b)(1)(D) (stating that the Attorney General may
    cancel the removal of a person whose "removal would result in exceptional and extremely
    unusual hardship to the alien's . . . child, who is a citizen of the United States").  Moreover, Ms.
21  Arce-Flores's immigration counsel attests that "Ms. Arce-Flores has a good argument that she
    should qualify for cancellation of removal under [8 U.S.C. § 1229b(b)(1)], although the ultimate
22  decision will be in the hands of [the] immigration court."  (Underwood Decl. (Dkt. # 317-2) ¶ 5.)

General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien . . . has been a person of good moral character during such period . . . .").  Her counsel also failed to recognize that, as a categorical matter, a person cannot make that showing if she has been confined to a penal institution for 180 or more days as a result of her conviction.  (Mot. at 5); 8 U.S.C. § 1101(f)(7) ("No person shall be regarded as, or found to be, a person of good moral character who . . . is, or was . . . one who during such period has been confined, as a result of a conviction, to a penal institution for an aggregate period of one hundred and eighty days or more . . . .").  Because of her counsel's misunderstanding and erroneous advice that a sentence of less than a year would not have immigration consequences, Ms. Arce-Flores contends that she did not further negotiate the plea arrangement and instead pleaded guilty.  (Mot. at 5; *see also* Arce-Flores Decl. ¶ 5.)  She states that she would not have pleaded guilty to the misdemeanor charge for which she could be sentenced to 180 days of confinement had she known of the adverse immigration consequences the plea entailed.  (Arce-Flores Decl. ¶¶ 7, 9.)

In addition, Mr. Engelhard attests that if he had understood the impact of the 180-day sentence on Ms. Arce-Flores's attempt to cancel removal, "he would have highlighted this for his client and he would have recommended that she reject the plea offer."  (Mot. at 6; Engelhard Decl. ¶ 7.)  He further states that he would have urged the Government to recommend a sentence of no more than 179 days.  (Engelhard Decl. ¶ 7.)

The court now addresses Ms. Arce-Flores's motion.

### III.    ANALYSIS

The court first addresses the procedural posture of this motion, then analyzes the request for *coram nobis* relief.

**A.    Ruling While on Appeal**

A notice of appeal typically divests the court of jurisdiction.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.").  However, even though Ms. Arce-Flores's appeal is currently before the Ninth Circuit, "[i]f a timely motion is made for relief that the [district] court lacks authority to grant because of an appeal that has been docketed and is pending, the court may[] (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).  If the court "states that it would grant the motion or that the motion raises a substantial issue," the moving party "must promptly notify the circuit clerk." Fed. R. Crim. P. 37(b).  The court may therefore address the merits of the motion, even though the case is on appeal, and now proceeds to do so.  *See generally* Fed. R. Crim. P. 37(a).

**B.    Writ of Error *Coram Nobis***

A writ of error *coram nobis* "provides a remedy for those suffering from lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of

//

//

fact and egregious legal errors."[3] *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989) (internal quotation marks omitted); *see also Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) ("District courts are authorized to issue the writ pursuant to the All Writs Act, 28 U.S.C. § 1651(a)."); *Rianto v. United States*, No. 1:12-cv-00516-DAD-SKO, 2017 WL 3334011, at *2 (E.D. Cal. Aug. 4, 2017) ("A writ of *coram nobis* is a remedy by which the court can correct errors in criminal convictions where other remedies are not available." (italics added)). The writ "is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable."[4] *United States v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015); *see also United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) (citing *United States v. Morgan*, 346 U.S. 502, 511 (1954)) (stating that

---

[3] The Government quotes *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal quotation marks omitted; alteration in original)), in which the Supreme Court stated that "[a]s we noted a few years after the enactment of the Federal Rules of Criminal Procedure, it is difficult to conceive of a situation in a federal case today where [a writ of *coram nobis*] would be necessary or appropriate." (Resp. at 10.) Despite the Government's characterization, the court does not take this statement to mean that such a form of relief is generally unavailable, even when a petitioner meets the extraordinary circumstances necessary for relief.

[4] "[P]etitions for *coram nobis* . . . may provide relief for persons who have grounds to challenge the validity of their conviction but, because they are not yet in custody or are no longer in custody, are not eligible for relief pursuant to [28 U.S.C.] § 2255." *United States v. Crowell*, 374 F.3d 790, 794 (9th Cir. 2004). "[I]f the sentence has been served, there is no statutory basis to remedy the 'lingering collateral consequences' of the unlawful conviction." *Telink*, 24 F.3d at 45 (quoting *Yasui v. United States*, 772 F.2d 1496, 1498 (9th Cir. 1985)). The fact that Ms. Arce-Flores is currently being held in immigration detention does not render her in custody for these purposes. *Cf. Resendiz v. Kovensky*, 416 F.3d 952, 956-57 (9th Cir. 2005), *abrogated on other grounds by Chaidez v. United States*, 568 U.S. 342 (2013); *Araujo v. Napolitano*, No. CV 12-7741-GAF (MAN), 2012 WL 4107846, at *2 n.2 (C.D. Cal. Sept. 18, 2012) (stating that "[t]he immigration consequences of a state conviction do not render a petitioner in custody pursuant [to] the judgment of a State Court for Section 2254 purposes" (internal quotation marks omitted)).

the Supreme Court has "characterized the writ as an extraordinary remedy that should be granted only under circumstances compelling such action to achieve justice" (internal quotation marks omitted)).  To qualify for *coram nobis* relief, a petitioner must establish that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."[5]  *Chan*, 792 F.3d at 1153.  The petitioner bears the burden of proving each requirement.  *See United States v. Garcia*, No. CR 99-0699-RSWL-3, 2017 WL 3669542, at *1 (C.D. Cal. Aug. 24, 2017).

Ms. Arce-Flores is facing removal, and the court finds the best course of action is to examine the merits of her motion, rather than to summarily deny or defer ruling on it. *See* Fed. R. Crim. P. 37(a).  Accordingly, the court analyzes the four factors to determine whether the court would grant the motion if the Ninth Circuit remands for that purpose or whether the motion raises a substantial issue.  *See* Fed. R. Crim. P. 37(a).

1. A More Usual Remedy

To seek *coram nobis* relief, the petitioner must demonstrate that a "more usual remedy"—such as habeas corpus relief—is unavailable.  *See United States v. Rodriguez-Trujillo*, Nos. 4:11-cv-00593-BLW, 4:08-cr-00240-BLW, 2013 WL 1314247, at *1 (D. Idaho Mar. 28, 2013).  Because Ms. Arce-Flores is not in custody or on

---

[5] "[P]etitions for a writ of *coram nobis* [are otherwise to] be treated in a manner similar to [28 U.S.C.] § 2255 *habeas corpus* petitions."  *Korematsu v. United States*, 584 F. Supp. 1406, 1413 (N.D. Cal. 1984) (citing *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981)).

supervised release or probation, the usual statutory remedies are unavailable.  *See United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010).  Moreover, the Government "concedes that a more usual remedy is not available to [Ms.] Arce-Flores as she is not in custody and thus is not eligible for habeas relief." (Resp. at 10.)  Ms. Arce-Flores therefore demonstrates this factor.

    2.  <u>Timing of Petition</u>

*Coram nobis* petitions are not subject to any statute of limitations.  *See Telink*, 24 F.3d at 45; *Rodriguez-Trujillo*, 2013 WL 1314247, at *4.  Instead, a petitioner must show that she had "sound reasons" for not challenging her conviction sooner.  *See Kwan*, 407 F.3d at 1013.  A petitioner has no sound reason when she delays for no reason whatsoever, the respondent demonstrates prejudice from the delay, or the petitioner appears to abuse the writ.  *Id.*

Ms. Arce-Flores argues that she could not have challenged her conviction earlier, while the Government contends that she fails to present evidence demonstrating a sound reason for her delay in alleging ineffective assistance of counsel.  (Mot. at 18 (stating that Ms. Arce-Flores filed this motion "while her case is still on appeal in the Ninth Circuit, relatively soon after new counsel was appointed[,] and shortly after [new counsel] received the transcripts from the plea and sentencing"); Reply at 15; Resp. at 11.) Specifically, the Government highlights that after her sentencing on December 2, 2016, Ms. Arce-Flores was transferred to the Northwest Detention Center due to the immigration proceedings and then did not move to clarify her sentence until April 3,

1   2017.  (Resp. at 10-11.)  Rather than challenging her sentence earlier, the Government

2   argues that she waited until she realized the potential negative immigration consequences

3   of her plea after the immigration court's order denying her bond, despite having been

4   advised of potential immigration consequences in the plea agreement, during the plea

5   colloquy, and at her sentencing hearing.  (*Id.* at 11.)  The Government further argues that

6   it is prejudiced by Ms. Arce-Flores's delay because of "the lapse in memories of the

7   government witnesses in the case, the potential destruction of corroborating bank and

8   business records, and the fact that many of the witnesses now reside in Mexico."  (*Id.* at

9   12.)

10          The court concludes that it is arguable that Ms. Arce-Flores did not unreasonably

11  delay this motion.  Although the plea agreement and the court generally advised Ms.

12  Arce-Flores about immigration consequences, Ms. Arce-Flores contends that she did not

13  understand the specific immigration consequence at issue here until the immigration

14  court's bond decision in March 2017.  (*See* Engelhard Decl. ¶ 9.)  Shortly after that

15  decision, on April 3, 2017, Ms. Arce-Flores moved to clarify the court's sentence.  (*See*

16  Mot. to Clarify at 1.)  Ms. Arce-Flores then filed the instant motion on August 14, 2017

17  (Mot. at 1), after new counsel was appointed on May 31, 2017 (Appt. (Dkt. # 313)).

18  Moreover, although the Government characterizes the issue as when Ms. Arce-Flores

19  realized the legal significance of her plea, the proper focus is on when Ms. Arce-Flores

20  realized the potential ineffective assistance of her counsel—the basis of her petition.

21  Based on this timeline, Ms. Arce-Flores arguably did not unreasonably delay this

22  petition.

In addition, any delay may not significantly prejudice the Government. "In making a determination of prejudice, the effect of the delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant." *Telink*, 24 F.3d at 48. As to the first relevant inquiry—the effect of the delay on the Government's ability to respond to the petition—the Government has not asserted any prejudice related to responding to the petition. (*See generally* Resp.) Indeed, the Government vigorously opposes the petition (*see generally id.*) and suffers no apparent prejudice in doing so.

As to the second relevant factor—the Government's ability to mount a retrial—the Government's assertions of prejudice are difficult to evaluate. The Government contends that the approximately eight-month period between sentencing and this motion has led to a lapse in the memories of its witnesses, the potential destruction of corroborating bank and business records, and the fact that "many" of the witnesses now reside in Mexico. (*Id.* at 12.) However, the Government does not explain specifically how those factors would affect a retrial, whether other evidence exists that would mitigate these issues, or whether the fact that many witnesses are now in Mexico is attributable to the eight-month period or some other factor. (*See generally id.*) Thus, based on the Government's presentation, the court cannot conclude that the eight-month period prejudices the Government.

For these reasons, the court concludes that it is arguable whether Ms. Arce-Flores unreasonably delayed bringing her *coram nobis* petition, and she raises a substantial issue.

### 3. Adverse Consequences

For a petitioner to succeed on a *coram nobis* petition, she must demonstrate adverse consequences stemming from the conviction to satisfy Article III's case or controversy requirement. *Chan*, 792 F.3d at 1153. Article III requires (1) an injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The inquiry in the context of a *coram nobis* petition is primarily concerned with whether any relief would be moot because the petitioner no longer suffers adverse collateral consequences from her conviction. *See Hirabayashi v. United States*, 828 F.2d 591, 606 (9th Cir. 1987) (stating that the Supreme Court has "held that 'a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction'" (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968))). The Ninth Circuit has held that "the possibility of deportation is an 'adverse consequence' of a petitioner's conviction sufficient to satisfy Article III's case or controversy requirement." *Kwan*, 407 F.3d at 1014. However, because the Government argues that Ms. Arce-Flores was subject to deportation before her conviction, the court addresses the Government's arguments regarding Ms. Arce-Flores's ability to demonstrate adverse consequences due to her conviction.

The Government first contends that Ms. Arce-Flores's injury is not fairly traceable to her conviction because "the immigration status in which she now finds herself"—subject to removal—did not change upon entry of her guilty plea. (Resp. at 13.) However, in making this argument, the Government incorrectly identifies the injury Ms.

Arce-Flores alleges here. She contends that her guilty plea renders her ineligible to demonstrate the good moral character required for cancellation of removal—not, as the Government suggests, that her guilty plea itself subjected her to removal. (*See* Mot. at 14; Reply at 7-8.) For this reason, the guilty plea for which Ms. Arce-Flores received a 180-day sentence is fairly traceable to her inability to demonstrate good moral character.

The Government also argues that Ms. Arce-Flores has not demonstrated redressability because "[e]ven if th[e] [c]ourt were to issue an order reducing [Ms.] Arce-Flores's sentence from 180 days to 179 days, there is no guarantee that she would avoid deportation or that the immigration court would grant her request for cancellation of removal." (Resp. at 14.) As with the causation element, the Government misstates the relevant injury. "Redressability does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision." *Nw. Requirements Utils. v. F.E.R.C.*, 798 F.3d 796, 806 (9th Cir. 2015) (internal quotation marks omitted); *see also Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013). Here, a favorable judicial decision on Ms. Arce-Flores's request to reduce her sentence below 180 days, resentence her, or allow her to withdraw her guilty plea is substantially likely to redress her inability to demonstrate good moral character.

The Government further argues that a favorable decision on Ms. Arce-Flores's *coram nobis* petition will not redress her injury because she may still be removed even if she can show good moral character. (Resp. at 13-14.) The Government relies on *Garcia-Mendoza v. Holder*, 753 F.3d 1165 (10th Cir. 2014), in support of its argument. (*Id.* at 14.) In *Garcia-Mendoza*, the petitioner had been charged with driving under the

influence and leaving the scene of an accident. 753 F.3d at 1167. His period of pretrial

confinement was 104 days before he pled guilty and was sentenced to 270 days with

credit for time served. *Id.* He was ultimately confined for 197 days. *Id.* Based on the

197-day period of confinement, an immigration judge found that the petitioner could not

establish good moral character because he had been confined more than 180 days. *Id.*

The petitioner appealed the immigration judge's decision and in the meantime, moved the

state trial court to amend his sentence. *Id.* The state court amended his sentence to 166

days. *Id.* at 1168. The Board of Immigration Appeals ("BIA") concluded, however, that

the petitioner could not demonstrate good moral character because, despite the sentence

reduction, he nevertheless had been confined for more than 180 days as a result of the

conviction. *Id.*

The Tenth Circuit Court of Appeals upheld the BIA's determination. *Id.* at 1169.

Specifically, the Tenth Circuit held that "Congress intended to bar aliens from

establishing good moral character when an alien was confined, as a result of [a]

conviction, for 180 days or more," and that the statutory "language focuses on the actual

period of confinement, and does not reference the ordered term of imprisonment." *Id.*

(alteration in original; internal quotation marks omitted). Accordingly, the court stated

that "[t]he inquiry under § 1101(f)(7) is fact-based, dependent on the actual period of

confinement, and not dependent on the formal language of the court's sentencing order."

*Id.*

The Ninth Circuit addressed a similar question in *Arreguin-Moreno v. Mukasey*,

511 F.3d 1229 (9th Cir. 2008). In that case, the Ninth Circuit held that "time spent in

pre-trial detention, which is credited as time served in a sentence imposed after conviction, is considered to be confinement as a result of a conviction within the meaning of 8 U.S.C. § 1101(f)(7)." *Id.* at 1230. The petitioner was sentenced to 21 months imprisonment, but "was given credit for the time she had served in pre-trial detention." *Id.* at 1230-31. Because the plaintiff had "been detained for eighteen months prior to sentencing, she served only two or three weeks before being released from confinement." *Id.* at 1231. After serving her sentence, the plaintiff applied for cancellation of removal, which the immigration judge denied because she had served 180 days or more as a result of her conviction and therefore was not of good moral character. *Id.* The Ninth Circuit affirmed this ruling and held that "pre-trial detention must be considered as confinement as a result of a conviction within the meaning of § 1101(f)(7)." *Id.* at 1233. Notably, however, the court stated that "pretrial detention cannot be counted as time served as a result of a conviction if not credited in the judgment of conviction as time served, or if the defendant is not convicted of the specific crime." *Id.* (citing *Gomez-Lopez v. Ashcroft*, 393 F.3d 882, 886 (9th Cir. 2005)).

Ms. Arce-Flores argues that *Garcia-Mendoza* is inapposite because she could not legally be imprisoned as a result of her conviction for longer than 180 days for illegal entry. (Reply at 12 ("[I]f Ms. Arce-Flores was credited toward her misdemeanor sentence with all of her pretrial detention time served on the dismissed felony charges— i.e., almost a year in custody—this sentence is clearly, on its face, . . . illegal since she could not lawfully serve more than six months in custody for this offense.").) The court agrees. Although *Garcia-Mendoza* supports the Government's position, the key

distinction here is that Ms. Arce-Flores could not legally be sentenced to more than six

months—180 days—for illegal entry. *See* 8 U.S.C. § 1325(a)(1) ("Any alien who []

enters or attempts to enter the United States at any time or place other than as designated

by immigration officers . . . shall, for the first commission of any such offense, be fined

under title 18 or imprisoned not more than 6 months, or both . . . ."); *cf. United States v.*

*Roberts*, 5 F.3d 365, 368 (9th Cir. 1993) (holding that "the judge violated [Federal] Rule

[of Criminal Procedure] 11 because [the defendant] received a potentially longer sentence

than the maximum he was advised of" at his plea hearing). Similarly, Ms. Arce-Flores's

"pretrial detention cannot be counted as time served as a result of a conviction if not

credited in the judgment of conviction as time served." *Arreguin-Moreno*, 511 F.3d at

1233 (citing *Gomez-Lopez*, 393 F.3d at 886). After the court clarified her sentence, the

additional time Ms. Arce-Flores spent in pretrial detention was not as a result of her

conviction because it was not credited in the sentence. *See id.*; (4/7/17 Order at 3

(clarifying that the court's sentence was six months).) Accordingly, if the court were to

grant Ms. Arce-Flores's requested relief, she could attempt to demonstrate good moral

character.

Because Ms. Arce-Flores's conviction prevents her from attempting to

demonstrate good moral character, she sufficiently demonstrates adverse consequences

arising from her conviction.

4. <u>Fundamental Error</u>

An error "of the most fundamental character" is one that renders "the proceeding

itself invalid.'" *Hirabayashi*, 828 F.2d at 604 (quoting *United States v. Mayer*, 235 U.S.

55, 69 (1914)).  "A *coram nobis* petitioner may show fundamental error by demonstrating

that he received ineffective assistance of counsel . . . ."  *Rianto*, 2017 WL 3334011, at *3

(emphasis added) (citing *Kwan*, 407 F.3d at 1014).  Here, Ms. Arce-Flores argues that the

fundamental error was Mr. Engelhard's ineffectiveness during the plea process and

sentencing.[6]  (*See* Mot. at 13-17.)  The Government argues that the court need not

consider whether Ms. Arce-Flores's counsel was deficient because she suffered no

prejudice from any alleged deficiency.  (Resp. at 16.)

The Sixth Amendment guarantees the right to effective assistance of counsel.

"The clearly established federal law for ineffective assistance of counsel claims is

*Strickland v. Washington*, 466 U.S. 668 (1984)."  *Atwood v. Ryan*, --- F.3d ----, 2017 WL

4018397, at *14 (9th Cir. Sept. 13, 2017).  To establish ineffective assistance of counsel

under *Strickland*, a petitioner must prove (1) that "counsel's performance was deficient,"

and (2) that "the deficient performance prejudiced the defense."  466 U.S. at 687.  "[A]

court must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance."  *Id.* at 688.  The right to effective assistance

of counsel extends to plea negotiations and sentencing.  *See Padilla*, 559 U.S. at 374;

*Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("Even though sentencing does not concern

the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing

hearing can result in *Strickland* prejudice because any amount of [additional] jail time has

---

[6] Ms. Arce-Flores mentions briefly that Mr. Engelhard was also ineffective in his
presentation of the post-sentencing clarification motion.  (Mot. at 17.)  Neither party
substantively briefs the issue, so the court assumes that any ineffectiveness regarding that motion
is encompassed in the alleged ineffectiveness at sentencing.

Sixth Amendment significance." (internal quotation marks omitted; alteration in original)); *United States v. Boothroyd*, 403 F. Supp. 2d 1011, 1016 (D. Or. 2005) ("Failure to investigate or prepare adequately for sentencing may render counsel ineffective.").

### a. Performance

"Performance is deficient when counsel's representation falls 'below an objective standard of reasonableness' and is therefore outside of 'the range of competence demanded of attorneys in criminal cases.'" *Atwood*, 2017 WL 4018397, at *14 (quoting *Strickland*, 466 U.S. at 689). Where immigration consequences arise from a defendant's guilty plea, counsel's performance may be deficient if counsel fails to inform his or her client that the client's plea carries a risk of deportation or misadvises the client about the immigration consequences of a plea agreement. *See Padilla*, 559 U.S. at 374 (holding that defense counsel must inform their clients whether their pleas carry "a risk of deportation"); *Chan*, 792 F.3d at 1154 ("[A]ffirmative misrepresentations by counsel regarding immigration consequences constitutes deficient performance under *Strickland*.").

The Supreme Court has held that "[w]hen the law is not succinct and straightforward," "a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. But where the law is "succinct, clear, and explicit" that removal is almost certain to follow a conviction, "counsel must advise his client that removal is a virtual certainty." *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015)

(citing *Padilla*, 559 U.S. at 368-69). The Ninth Circuit has further stated that "[t]he government's performance in including provisions [about immigration consequences] in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether *counsel*'s performance fell below an objective standard of reasonableness." *Rodriguez-Vega*, 797 F.3d at 787; *cf. Lee v. United States*, --- U.S. ---, 137 S. Ct. 1958, 1968 n.4 (2017) (stating that although several courts have recognized that "a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice," "a claim of ineffective of counsel extends to advice specifically undermining the judge's warnings themselves").

Here, Ms. Arce-Flores demonstrates that her prior counsel's assistance was ineffective at both the plea negotiation and the sentencing phases.[7] During plea negotiations, Mr. Engelhard affirmatively advised Ms. Arce-Flores that as long as she pleaded guilty to an offense with a maximum sentence below 365 days, she would still be able to contest her removal from the United States. (Engelhard Decl. ¶¶ 4-7.) However, 8 U.S.C. § 1107(f) is clear that a person who is imprisoned for more than 180 days as a result of conviction cannot demonstrate good moral character and therefore cannot qualify for cancellation of removal under 8 U.S.C. § 1229b(b)(1). *See Rodriguez-Vega*, 797 F.3d at 786 (citing *Padilla*, 559 U.S. at 368-69). Thus, Mr. Engelhard misadvised Ms. Arce-Flores about the immigration consequences, despite clear law on this issue.

---

[7] The Government does not address Mr. Engelhard's performance. (*See* Resp. at 16 ("[T]he [c]ourt need not reach the question of whether Mr. Engelhard's representation fell below an objective standard of reasonable because [Ms.] Arce-Flores cannot establish prejudice.").)

This misadvice also undermined the plea agreement and plea colloquy's general warnings about the possibility of deportation, given that Ms. Arce-Flores believed the crime to which she was pleading guilty would nevertheless allow her to contest removal. Accordingly, Mr. Engelhard's performance was deficient during the plea process.

In addition, Ms. Arce-Flores contends that Mr. Engelhard also failed at the sentencing hearing to advocate for a sentence that would allow Ms. Arce-Flores to contest her removal by demonstrating good moral character. (*See* Mot. at 17.) However, neither party addresses the interplay between Mr. Engelhard's performance at sentencing—both the hearing and the subsequent motion to clarify—and his deficiency during the plea process. (*See* Mot.; Resp.) For example, there is no substantive discussion of whether the motion to clarify rectified Mr. Engelhard's earlier deficiency because it highlighted the good moral character issue for the court or whether the court's clarification that it imposed a sentence of six months affects the analysis of counsel's earlier deficiency. (*See* Mot.; Resp.) In addition, neither party addresses the appropriate standard for evaluating Mr. Engelhard's performance at the sentencing stage. (*See* Mot.; Resp.)

Accordingly, Ms. Arce-Flores adequately demonstrates that Mr. Engelhard's performance was deficient in the plea process and presents a substantial issue regarding ineffective assistance of counsel in sentencing. If the Ninth Circuit remands this matter, the court would order further briefing regarding the sentencing phase and whether the court must consider ineffectiveness at both stages—rather than just at the pleading stage—in affording relief.

###### b. *Prejudice*

Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a standard of proof sufficient to undermine confidence in the outcome and is somewhat lower than a preponderance of the evidence." *Rodriguez-Vega*, 797 F.3d at 788. On an ineffective assistance of counsel claim involving a plea bargain, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. "[C]ommon sense . . . recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Lee*, 137 S. Ct. at 1966. "[I]n the context of plea agreements," the petitioner can show prejudice by showing "that the petitioner would have 'gone to trial or received a better plea bargain' absent counsel's errors." *Rianto*, 2017 WL 3334011, at *7 (citing *Rodriguez-Vega*, 797 F.3d at 788). A petitioner can demonstrate this prejudice by (1) identifying cases that indicate the government's willingness to permit defendants charged with the same or substantially similar crime to plead guilty to a nonremovable offense, (2) showing that he or she purposefully agreed to the charge to avoid adverse immigration consequences, or (3) in the absence of a more favorable plea agreement, he or she would have gone to trial. *Rodriguez-Vega*, 797 F.3d at 789. The Supreme Court recently added that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies,"

but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967. Such contemporaneous evidence could include testimony from both the defendant and the defendant's attorney, a showing that the defendant "repeatedly" demonstrated concern about deportation, and "strong connections" to the United States. *See id.* at 1967-68.

The Government does not, however, focus on these factors, and instead argues that because Ms. Arce-Flores is in the country illegally, she cannot as a matter of law demonstrate prejudice. (*See* Resp. at 16-17.) In support of its argument, the Government cites to a number of unpublished and out-of-circuit cases. (*See id.* at 17-18 (citing *Gutierrez v. United States*, 560 F. App'x 924, 927 (11th Cir. 2014); *United States v. Sinclair*, 409 F. App'x 674, 675 (4th Cir. 2011); *Cadet v. United States*, No. 1:11-CR-113-WBH-LTW-1, 2012 WL 7061444, at *2 (N.D. Ga. May 29, 2012); *United States v. Perea*, No. 08-20160-08-KHV, 2012 WL 851185, at *5 n.4 (D. Kan. Mar. 8, 2012); *United States v. Aceves*, No. 10-00738 SOM/LEK, 2011 WL 976706, at *5 (D. Haw. Mar. 17, 2011); *United States v. Gutierrez Martinez*, No. 07-91(5) ADM/FLN, 2010 WL 5266490, at *4 (D. Minn. Dec. 17, 2010)).) For example, the Fourth Circuit held that the defendant's "substantial rights were unaffected because he was an illegal alien and therefore his guilty plea had no bearing on his deportability." *Sinclair*, 409 F. App'x at 675. Similarly, the Eleventh Circuit held that "it would not have been rational for [the defendant] to reject the plea bargain" because he "never obtained legal status, and thus continued to be subject to removal." *Gutierrez*, 560 F. App'x at 927. But none of the cases the Government cites dealt with a defendant who, although in the country

illegally and therefore subject to removal regardless of conviction, nevertheless sought to cancel her removal by demonstrating good moral character. Moreover, the Government points to no Ninth Circuit authority affirmatively limiting prejudice in this context to people legally in the United States but subject to deportation. (*See* Resp. at 16-18.) Because Ms. Arce-Flores's sentence—even if not her conviction itself—makes her ineligible to contest removal by demonstrating good moral character, Ms. Arce-Flores can still demonstrate prejudice from her acceptance of the plea agreement based on her counsel's misadvice. *Cf. United States v. Krboyan*, Nos. 1:02-cv-05438 OWW, 1:10-cv-02016 OWW, 2011 WL 2117023, at *13 (E.D. Cal. May 27, 2011) ("Faced with the choice between certain deportation and the possibility of escaping deportation, it is reasonable to accept Petitioner's assertion that he would not have pled guilty and would have insisted on going to trial.").

 The evidence before the court shows that Ms. Arce-Flores wanted to maintain her eligibility for cancellation of removal, which required that she be able to show good moral character. (*See* Arce-Flores Decl. ¶¶ 5-7.) The evidence also establishes that she made that preference clear to Mr. Engelhard. (*See id.*; Engelhard Decl. ¶ 3.) To maintain her eligibility, she was prepared to negotiate for a different plea agreement or go to trial. (*See* Arce-Flores ¶¶ 5-7, 9; Engelhard Decl. ¶¶ 6-7, 13.) However, Mr. Engelhard's deficient performance foreclosed that possibility.

 The court finds that Ms. Arce-Flores demonstrates that Mr. Engelhard's deficient performance during the plea process prejudiced her. However, as with the deficient performance prong, the court notes that no party addresses how the sentencing phase

affects, if at all, a finding of prejudice arising from the plea process. *See infra* § III.B.4.a.

For example, the parties have not substantively addressed whether the court's subsequent

clarification of the sentence cured that prejudice. Thus, the court concludes that Ms.

Arce-Flores's motion raises a substantial issue as to whether she suffers prejudice from

counsel's deficient performance during the plea process. Thus, if the Ninth Circuit

remands, the court would also require further briefing on the issue.

5. <u>Remedy</u>

Finally, the Government argues that the relief Ms. Arce-Flores seeks is

unavailable. (*See* Resp. at 19.) The Government contends that a reduction in her

sentence from 180 to 179 days is unavailable because "Congress has limited the

circumstances under which a court may modify a sentence" by 18 U.S.C. § 3582(c). (*Id.*)

The Government further argues that Ms. Arce-Flores's *coram nobis* petition is

"justiciable only if it satisfies" Federal Rule of Criminal Procedure 35 and contends that

it does not. (*Id.* at 20); Fed. R. Crim. P. 35(a) (allowing a court to correct a sentence

within 14 days if the sentence "resulted from arithmetical, technical, or other clear

error"). Finally, the Government argues that Ms. Arce-Flores cannot withdraw her guilty

plea "because she lacks a fair and just reason" for doing so. (*Id.* at 21); Fed. R. Crim. P.

11(d)(2)(B) (providing that a defendant may withdraw a guilty plea prior to sentencing if

the defendant "can show a fair and just reason for requesting the withdrawal").

The law indicates, however, that the court's options are not so limited.

"Ineffective assistance of counsel . . . is 'a constitutional violation of a defendant's

rights,' and such a violation 'requires a remedy specifically tailored to the constitutional

error.'" *United States v. Dibe*, 776 F.3d 665, 671 (9th Cir. 2015) (quoting *United States v. Basalo*, 258 F.3d 945, 951 (9th Cir. 2001)); *see also United States v. Morrison*, 449 U.S. 361, 363 (1981) (stating that in determining an appropriate remedy for ineffective assistance of counsel, the court must consider the facts and circumstances of the particular case); *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650825, at *10 (E.D. Cal. July 1, 2010) (quoting *Riggs v. Fairman*, 399 F.3d 1179, 1184 (9th Cir. 2005) ("When ineffective assistance of counsel has deprived a defendant of a plea bargain, a court may choose to vacate the conviction and return the parties to the plea bargaining stage.")).  Accordingly, courts addressing ineffective assistance of counsel claims on writs of *coram nobis* have, for example, vacated their judgments.  *See Hirabayashi*, 828 F.2d at 604; *see also Garcia*, 2017 WL 3669542, at *1.

If the Ninth Circuit remands for a full disposition of this motion, the court will seek further briefing from the parties on a proper remedy for the alleged ineffective assistance of counsel in addition to the issues the court highlighted above.

## IV.  CONCLUSION

Based on the foregoing analysis, the court CONCLUDES that Ms. Arce-Flores's motion for a writ of error *coram nobis* (Dkt. # 317) raises a substantial issue.  Should the

//

//

//

//

//

Ninth Circuit Court of Appeals remand, the court will further address Ms. Arce-Flores's

motion in the manner described in this order.

Dated this 16th day of October, 2017.

JAMES L. ROBART
United States District Judge